UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                    Case No. 21-cr-0198

ALEX MOMPREMIER,

          Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On September 28, 2021, a grand jury returned a four-count indictment against three defendants, including Alex Mompremier, who was charged in counts one, two, and four. (ECF No. 1.) Count One alleged Mompremier conspired with others to distribute 5 kilograms or more of cocaine, intending, knowing or having reasonable cause to believe that the cocaine would be unlawfully imported into the United States in violation of 21 U.S.C. §§963, 959(a) and 960(b)(1)(B). Count Two alleged he distributed 5 kilograms or more of cocaine, intending, knowing, or having reasonable cause to believe that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. §§959(a) and 960(b)(1)(B), and 18 U.S.C. §2. Count Four alleged he carried firearms during and in relation to the drug trafficking crimes alleged in Counts One and Two, in violation of 18 U.S.C. §§924(c)(1)(A)(i) and 2. (*Id.*) The offenses are each alleged to have "begun outside the jurisdiction of any particular Sate or district of the United States." (*Id.*)

On March 29, 2022, Mompremier was arrested in Haiti and on May 9, 2022, he was brought to this district to face prosecution. (ECF No. 26 at 2.) Mompremier moved to dismiss the indictment arguing his arrest was illegal because it violated the extradition treaty between the United States and Haiti and constituted outrageous governmental conduct. (ECF. No. 24 at 5-9.) Mompremier also argued that 18 U.S.C. §924(c) "does not apply abroad." (*Id.* at 10.) In the alternative, Mompremier argued that under 18 U.S.C. §3238, venue should be transferred to the District of Columbia or to the District of Puerto Rico. (*Id.* at 16, 19-21.) The motion was briefed by the parties and on July 28, 2022, Magistrate Judge William E. Duffin filed a Report

and Recommendation that the motion be denied. (ECF No. 29.) On August 4, 2022, Mompremier filed written objections to the report. (ECF No. 31.) The government filed a response to the objections on August 10, 2022. (ECF. No. 32.) As discussed below, the Court adopts Magistrate Judge Duffin's recommendation in its entirety and accordingly, will deny Mompremier's motion. In addition, because the Court resolves all disputed issues based solely on the pleadings, an evidentiary hearing is not necessary.

## STANDARD OF REVIEW

When reviewing a magistrate judge's recommendation, the district judge must review *de novo* the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1).

## ANALYSIS

Mompremier objects to four aspects of the magistrate judge's report. First, Mompremier challenges the magistrate judge's determination that Mompremier's arrest did not violate the extradition treaty between the United States and Haiti. Second, he objects to the conclusion that the Seventh Circuit does not recognize an "outrageous government misconduct" exception to the *Ker-Frisbie* doctrine. Third, Mompremier contends the magistrate judge erred in ruling that 18 U.S.C. §924(c) applies extraterritorially. Fourth and finally, Mompremier objects to the magistrate judge's determination that venue is proper in the Eastern District of Wisconsin under 18 U.S.C. §3238 and, therefore, the case should not be transferred to the District of Columbia or to the District of Puerto Rico.

### I. Mompremier's Transfer to the Eastern District of Wisconsin to Face Criminal Charges Did Not Violate the Extradition Treaty between the United States and Haiti.

The *Ker-Frisbie* doctrine "holds that a criminal defendant cannot defeat personal jurisdiction by asserting the illegality of the procurement of his presence in the relevant jurisdiction – here, the United States." *U.S. v. Arbane*, 446 F.3d 1223, 1225 (11th 2006) (citing *Ker v. Illinois*, 119 U.S. 436 (1886); *Frisbie v. Collins*, 342 U.S. 519 (1952)). Once the defendant has been transferred from Haiti to the Eastern District of Wisconsin, the *Ker-Frisbie* doctrine permits his trial in this district for the offenses alleged in the indictment. Mompremier claims that the *Ker-Frisbie* doctrine does not apply in two circumstances: where a treaty was

violated in bringing the defendant to the United States or in cases of outrageous government misconduct.  Neither claimed exception helps Mompremier here.

Mompremier argues that his transfer to the United States and this district violates the U.S.-Haiti Extradition Treaty.  *See* U.S.-Haiti Extradition Treaty:  Treaty between the United States and the Republic of Haiti for the mutual extradition of criminals, 34 Stat. 2858, Aug. 9. 1904 (the "Treaty").  More particularly, he contends that because the Treaty does not explicitly provide for drug trafficking offenses to be extradited, the Treaty serves as a limitation on the offenses that the United Sates can prosecute a Haitian national. (ECF. No. 31 at 3.)  The Treaty, however, is not the only mechanism by which a Haitian national may be lawfully transferred to the United States.  "An extradition treaty constitutes one way in which a country may gain custody of a national of another country for the purpose of prosecution, but it is not the only way." *United States v. Castillo*, 568 F. App'x 774, 782 (11th Cir. 2014).  In addition, "[f]or extradition to be the sole method of transfer, the treaty must *expressly prohibit* any other method." *United States v. Gardiner*, 279 F. App'x 848, 850 (11th Cir. 2008) (emphasis added).  Thus, "absent such a specific prohibition, even after instigation of formal extradition, the U.S. government may act to obtain custody of the defendant through other channels without invoking or violating an extradition treaty." *United States v. Herbert*, 313 F.Supp.2d 324, 330 (S.D.N.Y. 2004) (citing *Kasi v. Angelone*, 300 F.3d 487, 499 (4th Cir. 2002)).

The Treaty states that "[n]either of the Contracting Parties shall be obliged to deliver up its own citizens." *See* U.S.-Haiti Extradition Treaty, Art. IV.  This provision, however, does not express an affirmative agreement that extradition is the exclusive method for obtaining custody.  The magistrate judge noted that Mompremier's arrest and transport to this district would violate the Treaty only if the Treaty explicitly prohibited it or if the treaty explicitly stated that the only way the United States could take him into custody was through extradition.  As the magistrate judge correctly noted, the Treaty does neither. (ECF No. 29 at 7-8.).  The magistrate judge also relied on a case from the Eleventh Circuit expressly holding that the Treaty does not limit the United States to extradition as a means for obtaining custody of Haitian nationals. *Philippe v. United States*, No. 19-10323-D, 2019 WL 12660977, at *1 (11th Cir. June 4. 2019) ("the extradition treaty between the United States and Haiti does not preclude other methods of securing a defendant's presence in the United States").  This authority is persuasive here.

The government also reports, and Mompremier does not dispute, that the Haitian authorities transferred him to the custody of the United States upon the request of the United States. (ECF No. 32 at 5.) The Treaty "contains no prohibition against procuring the presence of an individual outside the terms of the treaty – let alone one barring the signatories from informally cooperating with each other as they did in this case." *United States v. Mejia*, 448 F.3d 436, 443 (D.C. Cir. 2006) (addressing the U.S.-Panama Treaty). Because Mompremier was not "extradited" to the United States under the provisions of the Treaty, the legal requirements of the Treaty do not govern. *See United States v. Abdalla*, 317 F. Supp.3d 786, 793 n.3 (S.D.N.Y 2018) ("[T]he Extradition Treaty does not apply where, as here, the transfer of the defendants did not occur through extradition.").

Mompremier next argues that the Seventh Circuit's "outrageous conduct" case law runs counter to Supreme Court precedent and must be rejected. (ECF. No. 31 at 5.) "Outrageous governmental conduct" is one of the exceptions to the *Ker-Frisbie* doctrine. The magistrate judge correctly determined that the Seventh Circuit does not recognize an "outrageous government misconduct" exception to the *Ker-Frisbie* doctrine. *See United States v. Mitchell*, 957 F.2d 465, 470 (7th Cir. 1992) ("Although the Second Circuit recognized an 'outrageous conduct' or 'shock-the-conscience' exception to the *Ker-Frisbie* doctrine … we have declined to follow the exclusionary rule grounds … and have questioned its continuing constitutional vitality."); *see also United States v. Smith*, 792 F.3d 760, 768 (7th Cir. 2015) ("we do not recognize outrageous government conduct as cause for dismissing an indictment"); *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011) ("Outrageous government conduct is not a defense in this circuit.").

Moreover, even if such an exception existed in the Seventh Circuit or under Supreme Court precedent, the magistrate judge correctly concluded that the defendant failed to allege any facts showing that his arrest was an example of "outrageous conduct." (ECF No. 29 at 8-9.) The Court declines to address Mompremier's argument that Mompremier argues that the Mansfield Amendment, which prohibits U.S. officers from directing arrests in foreign countries, informs the standard of conduct. In this case, the defendant was arrested in Haiti by the Haitian National Police, transferred into the custody of the United States at the request of the United States, and flown back to the United States in a DEA airplane. (ECF No. 26 at 2.) The Mansfield Amendment therefore simply does not apply. *See Mejia*, 448 F.3d at 443. Accordingly, this

Court adopts the report and recommendation of the magistrate judge and denies Mompremier's motion to dismiss the indictment.

## II. Section 924(c) has Extraterritorial Application.

Mompremier also objects to the magistrate judge's ruling that 18 U.S.C. §924(c) applies extraterritorially. He contends that because 18 U.S.C. §924(c) does not explicitly state that it applies abroad, it does not and the Court's analysis need go no further. (ECF. No. 31 at 6.) Citing the Supreme Court's decisions in *Kiobel v. Royal Dutch Petroleum Co.*, 579 U.S. 108 (2013) and *RJR Nabisco, Inc. v. Eur. Comty.*, 136 S.Ct. 2090 (2016), Mompremier insists the affirmative intention of Congress to apply the statute abroad must be clearly expressed. This cursory argument is not persuasive.

The magistrate judge correctly noted the long-standing presumption that "American laws do not apply outside of the United States – unless Congress directs otherwise." *United States v. Garcia Sota*, 948 F.3d 356, 357 (D.C. Cir. 2020). This presumption, however, "is just a presumption" that can "be overcome when Congress 'has affirmatively and unmistakably instructed that the statute will apply abroad.'" *Id.* at 358 (quoting *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 335 (2016)). Congress can provide such instruction without explicitly having the "statute say 'this law applies abroad.'" *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010).

The nature of a Section 924(c) offense supports an inference that it has extraterritorial application. "Section 924(c) crimes are not ordinary substantive offenses." *United States v. Abu Khatallah*, 151 F. Supp. 3d 116, 136 (D.D.C. 2015). "They depend on the commission of a concurrent – and predicate – 'crime of violence'" or drug-trafficking crime. *Id.*; *see also* 18 U.S.C. §924(c)(1)(A). Section 924 "serves an ancillary role" to the drug trafficking crimes with which Mompremier has also been charged. "The extraterritorial reach of an ancillary offense … is coterminous with that of the underlying criminal statute." *United States v. Ali*, 718 F.3d 929, 939 (D.C. Cir. 2013) (citation omitted). In other words, and as determined by the magistrate judge, "when the underlying criminal statute applies abroad, the ancillary statute does, too." (ECF No. 29 at 11.)

Lower court decisions since *Kiobel* and *RJR Nabisco* have continued to hold that Section 924(c) has extraterritorial application. See *Garcia Soto*, 948 F.3d at 362 ("§ 924(c) applies extraterritorially where linked to an extraterritorially applying predicate") *United States v.*

*Apodaca*, 275 F. Supp.3d 123, 152 n.16 (D.D.C. 2017) ("*RJR Nabisco* is entirely consistent with the universal view of courts that §924(c) applies extraterritorially where the underlying predicate violation expressly rebuts the presumption against extraterritoriality"). Here, the predicate offense, 18 U.S.C. §959(d), expressly provides for extraterritorial application. The magistrate judge correctly concluded that 18 U.S.C. §924(c) applies extraterritorially where Congress explicitly gave the predicate crime of drug trafficking extraterritorial effect. This ruling also complies with the great weight of authority. *See* ECF No. 32 at 10-12 (compiling cases).

### III. Venue is proper in the Eastern District of Wisconsin.

Mompremier next objects to the magistrate judge's conclusion that venue in the Eastern District of Wisconsin is proper. Mompremier argues that if a defendant is indicted before he is brought to the United States, then that indictment is proper only in the district where the defendant was last known to have resided or in the District of Columbia. (ECF 31 at 11-12.) Mompremier misapprehends 18 U.S.C. §3238, which "gives the government considerable discretion in picking venue." *United States v. Ghanem*, 993 F.3d 1113, 1127 (9th Cir. 2021).

18 U.S.C. §3238 provides:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

The statute provides that venue is proper in the district where the offender is arrested or "first brought," *or* in the district of his last known residence or the District of Columbia if an indictment is filed in either of those districts before the offender is first brought into any district. The first clause of the statute permits the government to establish venue wherever the offender is arrested or "first brought" while the second, as an alternative, allows the government to establish venue wherever the offender last resided or in the District of Columbia. The magistrate judge analyzed the statute and noted that the semicolon separates the statute into two clauses. He further discussed that the latter clause was added in 1963 to provide the government with an

alternate basis to establish venue in cases where venue had not yet been established through an arrest so as to avoid having the statute of limitations running before criminal proceedings could be initiated. (ECF. No. 29 at 14-15) (citing *United States v. Layton*, 519 F. Supp. 942, 944-45 (N.D. Cal. 1981) (summarizing section 3238's legislative history). This Court agrees with the magistrate judge that the two clauses "must be read in the disjunctive." And, the parties essentially agree that Mompremier was "first brought" to the Eastern District of Wisconsin. *See* ECF No. 24 at 7, 18; ECF No. 26 at 2.

Mompremier claims that government manufactured venue and requests that the government explain its reasons for flying the defendant from Haiti to this district, bypassing Puerto Rico and Florida. (ECF No. 31 at 12.) Manufactured venue may not be a viable doctrine in the Seventh Circuit. *See United States v. Rodriguez-Rodriguez*, 453 F.3d 458, 462 (7th Cir. 2006) ([government]agents may influence where the federal crime occurs, and thus where venue lies, as well as whether the crime comes under federal rather than state law. The entrapment doctrine protects the defendant against manufactured offenses …; it does not limit venue.) What is clear is that "the government can bring an out-of-country defendant to any district of its choice by flying him directly there while in custody, and venue would lie in that district." *Ghanem*, 993 F.3d at 1127-28. Accordingly, venue is proper in the Eastern District of Wisconsin and Mompremier's objection that venue is improper is overruled.

### IV. Transfer of Venue to the District of Puerto Rico is not Warranted.

Mompremier's objects to the magistrate judge's application of the 10 factors for transfer of venue enumerated in *Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240 (1964). The Platt factors include:

> (1) location of [] defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

*Id.* at 243-44. The Court has reviewed the above-noted ten factors and agrees with the reasoning of the magistrate judge: the factors either weigh against transferring the case to Puerto Rico or are neutral; none of the factors favor a transfer. (ECF No. 29 at 19-24.) Accordingly, the Court

overrules the defendant's objection and adopts the recommendation that Mompremier's motion to transfer venue to the District of Puerto Rico be denied.

## CONCLUSION

After a *de novo* review of the recommendations made by Magistrate Judge Duffin under 28 U.S.C. §636(b)(1), the Court overrules the Defendant's Objections (ECF No. 31) and accepts, in its entirety, the Report and Recommendation of the Magistrate Judge (ECF No. 29). The Court further determines that because the issues raised by the defendant's motion can be determined on the pleadings, an evidentiary record is not necessary.

Accordingly, **IT IS ORDERED** that the Defendant's Motion to Dismiss or in the Alternative to Change Venue (ECF No. 24) is **DENIED**.

Dated at Milwaukee, Wisconsin on September 30, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge